USCA1 Opinion

 

 April 21, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1659 DAVID VEGA-MENA, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ ERRATA SHEET The opinion of this Court issued on April 13, 1993, is amended as follows: On page 12, last line, delete "is" after "it". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1659 DAVID VEGA-MENA, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen C. Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Skinner,* Senior District Judge. _____________________ ____________________ Eli B. Arroyo with whom Andres Garcia Arache and Alcides Oquendo _____________ _____________________ ________________ Maldonado were on brief for appellant. _________ Silvia Carreno Coll, Assistant United States Attorney, with whom ___________________ Daniel F. Lopez-Romo, United States Attorney, was on brief for the ____________________ United States. ____________________ April 13, 1993 ____________________ ____________________ *Of the District of Massachusetts, sitting by designation. CAMPBELL, Senior Circuit Judge. Appellant, a ______________________ security guard injured on the job at a United States naval station in Puerto Rico, brought this negligence action against the United States and others after he collected benefits under Puerto Rico's workers' compensation system. The United States District Court for the District of Puerto Rico granted summary judgment for the United States, finding that the United States was appellant's "statutory employer" and thus immune from suit under the Puerto Rico Workmen's Compensation Act. Appellant argues on appeal that the court misapplied Puerto Rico law, and, in the alternative, that federal law preempts the statutory employer immunity rule of Puerto Rico law. We affirm the grant of summary judgment. I. I. In 1988, appellant David Vega-Mena was employed by Vigilantes, Inc. ("Vigilantes"), a Puerto Rican corporation, as a security guard. Pursuant to a contract with the United States of America, Vigilantes provided security guard services at the United States Naval Station, Roosevelt Roads in Ceiba, Puerto Rico. On the evening of October 13, 1988, Vega-Mena was performing his duties as a security guard at the Roosevelt Roads naval station when he fell into a tank of waste diesel fuel and sustained serious injuries. Vigilantes was an insured employer pursuant to the Puerto Rico Workmen's Compensation Act ("PRWCA"), 11 L.P.R.A. -3- 1 et seq., and Vega-Mena applied for, and collected, all _______ the benefits available to him as an employee of Vigilantes under the PRWCA. Thereafter, in October 1990, Vega-Mena and other plaintiffs brought this civil action in the United States District Court for the District of Puerto Rico against the United States, Vigilantes, and certain other defendants. Plaintiffs alleged that defendants' negligence had caused Vega-Mena's injuries. For reasons not relevant to this appeal, the complaint was amended in April 1991 to name Vega- Mena as the sole plaintiff and Vigilantes and the United States as the only defendants. Both the original and amended complaints alleged that the district court had jurisdiction pursuant to 28 U.S.C. 1346, the jurisdictional provision of the Federal Tort Claims Act. The complaints also referred to 28 U.S.C. 2671, which defines terms used in the Federal Tort Claims Act. The only cause of action alleged was for "negligence." The district court dismissed the claims against Vigilantes on jurisdictional grounds. Vega-Mena does not appeal from that ruling. In July 1991, the United States moved for summary judgment on the claims against it. The government argued that the Puerto Rico Workmen's Compensation Act entitled it to "statutory employer" immunity against appellant's action. Vega-Mena replied that the United States did not meet the requirements of Puerto Rico for statutory -4- employer status. In the alternative, he contended, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq. which applied to his case, appellant argued, _______ by force of the Defense Bases Act, 42 U.S.C. 1651 preempted Puerto Rico's statutory employer rule, disentitling the United States to statutory employer immunity. The district court granted summary judgment to the United States, finding no genuine issue of material fact and holding that the PRWCA provided the United States with statutory employer immunity. The court noted that plaintiff's original and amended complaints made no reference to the Longshoreman and Harbor Workers' Compensation Act or the Defense Bases Act, but stated that "the outcome would have been the same" even if he had "brought the claim" under those acts. Appellant Vega-Mena appeals from the district court's final order to the extent it granted summary judgment for appellee, the United States. II. II. A. Puerto Rico Statutory Employer Doctrine _______________________________________ Vega-Mena contends that the district court misconstrued Puerto Rican law in determining that the United States was immune as a "statutory employer" from tort liability for appellant's injuries. Under the workers' compensation scheme in Puerto Rico, when an employee suffers an injury, illness, disability -5- or death as a result of "any act or function inherent in [his] work," and his employer is insured according to law, the employee's right to compensation from the employer is limited to the statutory compensation offered through the State Insurance Fund. 11 L.P.R.A. 2, 21; Santiago Hodge v. ______________ Parke Davis & Co., 126 D.P.R. 1 (1990) (hereinafter Santiago _________________ ________ Hodge P.R.) (reprinted in Santiago Hodge v. Parke Davis & __________ _________ __ ______________ ______________ Co., 909 F.2d 628, 635 (1st Cir. 1990) (hereinafter Santiago ___ ________ Hodge II)). The injured worker lacks a cause of action _________ against his employer for damages regardless of the employer's degree of negligence. Santiago Hodge P.R., reprinted in 909 ___________________ _________ __ F.2d at 636-37. The PRWCA does not, however, prevent the injured worker from suing a third party in tort for the worker's insured injuries, such a defendant being a stranger to the employer-employee relationship. Id. at 637; see 11 ___ ___ L.P.R.A. 32.1 ____________________ 1. 11 L.P.R.A. 32 provides in part: In case where the injury, the professional disease, or the death entitling the workman or employee or his beneficiaries to compensation in accordance with this chapter has been caused under circumstances making a third party responsible for such injury, disease, or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third party responsible for said injury, disease, or death, within one year following the date of the final decision of the case by the Manager of the State Insurance Fund, who may subrogate himself in the rights of -6- The concept of "statutory employer" was fashioned by the Puerto Rico courts to extend an employer's immunity to certain persons who were not technically employers but were thought to deserve immunity from tort liability because of their close involvement in the employer-employee relationship. See Santiago Hodge v. Parke Davis & Co., 859 ___ _______________ __________________ F.2d 1026, 1029 (1st Cir. 1988) (hereinafter Santiago Hodge ______________ I). The courts took note of the fact that a contractor is _ not only compelled to provide workmen's compensation insurance for his own employees, see 11 L.P.R.A. 19, but is ___ also "subsidiarily liable for the premium payments ('taxes') ____________ of the workers of a person who 'contracted' with him [the contractor] or the workers of 'a contractor or independent subcontractor' hired by him when the latter were not insured[.]" Santiago Hodge P.R., reprinted in 909 F.2d at ___________________ _________ __ 637 (emphasis in original); see 11 L.P.R.A. 20.2 The term ___ ____________________ the workman or employee or his beneficiaries to institute the same action . . . . 2. 11 L.P.R.A. 20 provides: Every insured employer shall, on reporting his annual payrolls, include in said payrolls the wages paid to all the workmen and employees working for or employed by him, whether by the job or under some person with whom the employer contracted for the job, or under a contractor or independent subcontractor employed or contracted by said employer; and all accounts or taxes collected by the State shall be based on the -7- "statutory employer" is thus used by the Puerto Rico courts to refer to "the principal contractor and to distinguish him from the subcontractor, the real or contractual employer of an employee who seeks compensation for a work-related accident, when the principal contractor may be protected by the employer immunity." Santiago Hodge P.R., reprinted in ___________________ _________ __ 909 F.2d at 638. One purpose for making contractors responsible for the premiums incurred by subcontractors is to encourage principal contractors, when choosing subcontractors, to insist that they carry the appropriate workers' compensation insurance. Id. at 637. ___ Puerto Rico case law "has only recognized the 'statutory employer' within the context of a contract or subcontract for work or services, and only for project owners, principal contractors or subcontractors who had, with regard to the injured worker, the mutual legal obligation to insure him with the State Insurance Fund." Id. at 638. "The ___ determinant factor of immunity is the existence of that direct or indirect link between the workman who suffers the accident and the employer in the course of whose employment and as consequence of which the injury takes place." Ruiz ____ ____________________ employer's current payroll in which shall be included the above-mentioned laborers; Provided, That this provision shall not be applicable to employers for whom work is done by an independent contractor who is insured as an employer under the provisions of this chapter. -8- Diaz v. Vargas Reyes, 109 D.P.R. 761, 9 P.R. Sup. Ct. Off'l ____ ____________ Translations 1019, 1024 (1980). Unless there exists a legal nexus linking the worker's direct employer to the wrongdoer in the mutual legal obligation to insure the employee with the Fund, the alleged wrongdoer is a mere "third party" lacking statutory protection against claims by injured workers, and not an immune "statutory employer." Santiago Hodge P.R., reprinted ____________________ _________ in 909 F.2d at 638. The crucial factor in determining __ whether the requisite legal nexus exists is the nature and terms of the contractual relationship between the contractor and subcontractor. Id. at 639. In Lugo S nchez v. Puerto ___ _____________ ______ Rico Water Resources Auth., 105 D.P.R. 861, 5 P.R. Sup. Ct. __________________________ Off'l Translations 1198 (1977), the Puerto Rico Supreme Court held that a principal contractor who requires his independent subcontractors to take out workmen's compensation insurance has "insured" the workmen of the independent subcontractor and is therefore immune from suit under the exclusive remedy provision, 11 L.P.R.A. 21. See Garcia v. Friesecke, 597 ___ ______ _________ F.2d 284, 288-89 (1st Cir.), cert. denied, 444 U.S. 940 _____________ (1979); Santiago Hodge P.R., reprinted in 909 F.2d at 638. ___________________ _________ __ In the present case, the district court ruled that the United States qualified as a statutory employer because it shared the legal obligation to insure Vigilantes' employees under the Puerto Rico workers' compensation -9- program. The United States and Vigilantes clearly had a principal contractor-subcontractor relationship. Under their written agreement, Vigilantes was obligated to provide guard services to the United States at specified locations for the term of the contract. Vigilantes' employees, including appellant, worked as guards at United States naval facilities, and appellant sustained his injuries while working as a Vigilantes guard on patrol at such a facility. Even more to the point, the United States contractually required Vigilantes to obtain state workers' compensation insurance for the security guards as required by Puerto Rico law.3 It was under this insurance that appellant, following ____________________ 3. The relevant provision in the contract reads: H.18 INSURANCE _________ Within fifteen (15) days after the award of this contract, the Contractor [Vigilantes] shall furnish the OIC [a United States government agency] certificate of insurance as evidence of the existence of the following insurance coverage in amounts not less than the amounts specified below in accordance with the "INSURANCE - WORK ON A GOVERNMENT INSTALLATION" clause, Section I. COVERAGE COVERAGE PER PERSON PER ACCIDENT PROPERTY Comprehensive $300,000 $1,000,000 $100,000 General Liability Automobile $300,000 $1,000,000 $100,000 Liability Worker's AS REQUIRED BY STATE LAW Compensation (Other as required by State Law) -10- injury, brought his claim for compensation and recovered. Given the terms of the contract between the parties, it is clear that under Puerto Rico law the requisite legal nexus existed between the United States and Vigilantes, and thus that the United States was properly found by the district court to be immune as appellant's statutory employer. Appellant makes only one attack on the district court's application of Puerto Rico law to the facts, arguing that the contract between Vigilantes and the United States was essentially a "contract for hire" recognized by 31 L.P.R.A. 4111, and that this type of contract creates only a relationship of employer-employee, not contractor- subcontractor.4 However, section 4111 only entitles ____________________ The Certificate of Insurance shall provide for thirty days written notice to the OIC by the insurance company prior to cancellation or material change in policy coverage. Other requirements and information are contained in the aforementioned "Insurance" clause. 4. 31 L.P.R.A. 4111 provides: Period of contract for services; ____________________________________ remuneration The services of servants ____________ and laborers may be contracted for a fixed period of time, or without a fixed period. A hiring for life shall be void. Professional services, as regards the remuneration therefor, shall be subject to the agreement of the parties; and where there is no agreement as to remuneration, and a disagreement should arise respecting the same, the party entitled to such remuneration may sue and recover from the adverse party the reasonable value of such services in any court of competent jurisdiction. -11- servants and laborers to collect the reasonable value of their services from an employer if there is no written employment agreement, and prohibits "hiring for life." 31 L.P.R.A. 4111. It does not in any way alter or void the terms of the written contract between the United States and Vigilantes, which clearly establishes a contractor- subcontractor relationship sufficient to entitle the United States to statutory employer immunity under Puerto Rico law.5 We find no error, therefore, in the district court's holding that, under Puerto Rico law, the United States is immune as a "statutory employer" from suit by appellant under Puerto Rican tort law. B. Applicability of the Longshore and Harbor Workers' _______________________________________________________ Compensation Act ________________ Appellant argues, in the alternative, that the United States is not immune because the federal Longshore and Harbor Workers' Compensation Act preempts Puerto Rico's rule of statutory employer immunity. The district court applied Puerto Rico law because appellant's complaint stated its ____________________ 5. Appellant argues that the United States waived the affirmative defense of statutory employer immunity by failing to raise it in its answer to the complaint. We decline to consider appellant's argument because he never advanced it before the district court. Clauson v. Smith, 823 F.2d 660, _______ _____ 666 (1st Cir. 1987). -12- claim against the United States under the Federal Tort Claims Act ("FTCA"). The complaint expressly invoked the jurisdictional provision of the FTCA, 28 U.S.C. 1346, without mentioning any other federal or state law. Under 28 U.S.C. 1346(b), the district court has jurisdiction over actions against the United States for money damages: for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the _____________________________ United States, if a private person, would _________________________________________ be liable to the claimant in accordance _________________________________________ with the law of the place where the act _________________________________________ or omission occurred. ____________________ 28 U.S.C. 1346(b) (emphasis supplied). The district court applied the law of the place where the act or omission occurred, Puerto Rico, and reached the conclusion, affirmed supra, that under Puerto Rico law the United States was _____ immune as a statutory employer. Appellant concedes that he sued the United States pursuant to the FTCA and that the FTCA mandates application of local law. However, he argues: (1) the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901 et seq., also applies to this case, as extended by the ________ Defense Bases Act, 42 U.S.C. 1651 et seq.; (2) the LHWCA _______ exclusive liability provision, 33 U.S.C. 905(a), entitles a contractor to statutory employer immunity only if the subcontractor actually fails to secure payment to the injured -13- worker; (3) the subcontractor here, Vigilantes, did not fail to secure compensation payments for appellant; (4) therefore, under the LHWCA, the United States is not immune from appellant's suit for damages; and, (5) since the LHWCA is federal law, it preempts the inconsistent PRWCA rule and thus should have been applied by the district court. Appellant's preemption argument presupposes that, because his accident occurred on a naval base in Puerto Rico, the Defense Bases Act, 42 U.S.C. 1651 et seq., applies, _______ mandating application of the Longshore and Harbor Workers' Compensation Act. See 42 U.S.C. 1651(a).6 This ___ supposition may or may not be so. It can be argued that, for ____________________ 6. 42 U.S.C. 1651 provides that: (a) Except as herein modified, the provisions of the Longshoremen's and Harbor Workers' Compensation Act, approved March 4, 1927 (44 Stat. 1424), as amended, shall apply in respect to the injury or death of any employee engaged in any employment (2) upon any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States (including the United States Naval Operating Base, Guantanamo Bay, Cuba; and the Canal Zone); . . . . Section 1651 also makes the LHWCA applicable to employees of contractors and subcontractors on certain public works projects outside the continental United States. 42 U.S.C. 1651(a)(3)-(a)(5). 42 U.S.C. 1651(b)(4) defines "continental United States" as "the States and the District of Columbia." -14- the narrow and specialized purposes of the Defense Bases Act, Puerto Rico is not a "Territory or possession outside the continental United States" as those terms are there intended to be understood.7 We need not, however, decide this ____________________ 7. Appellant asserts without analysis that bases in Puerto Rico "obviously" fall within the definition of "any lands occupied or used by the United States for military or naval purposes in any Territory or possession outside the continental United States." The question is not so simple, however. The Defense Bases Act applies to bases in any "territory," but that term is not defined by the Act nor has appellant cited any cases interpreting it in that context. As we have noted before: The term "territory" does not have a fixed and technical meaning accorded to it in all circumstances, and thus Puerto Rico may be found to be included within one act whose coverage extends to territories of the United States and excluded from another. Americana of _____________ Puerto Rico, Inc. v. Kaplus, 368 F.2d __________________ ______ 431, 436 (3d Cir. 1966), cert. denied, ____________ 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967). "[W]hether Puerto Rico comes within a given congressional act applicable in terms to a 'territory,' depends upon the character and aim of the act." Puerto Rico v. The Shell Company, ___________ _________________ 302 U.S. 253, 258, 58 S.Ct. 167, 169, 82 L.Ed. 235 (1937). Garcia v. Friesecke, 597 F.2d 284, 293 (1st Cir.), cert. ______ _________ _____ denied, 444 U.S. 940 (1979). Nor is it clear whether the ______ Defense Bases Act can apply concurrently with local compensation acts. See 42 U.S.C. 1651(c) (making liability ___ of employer under Defense Bases Act "exclusive and in place of all other liability of such employer . . . to his employees (and their dependents) within the purview of this chapter, under the workmen's compensation law of any State, Territory, or other jurisdiction"); Flying Tiger Lines, Inc. ________________________ v. Landy, 370 F.2d 46, 51-52 (9th Cir. 1966). _____ In Royal Indemnity Co. v. Puerto Rico Cement Corp., 142 ___________________ _________________________ F.2d 237 (1st Cir.), cert. denied, 323 U.S. 756 (1944), this ____________ court stated that the purpose of the Defense Bases Act "was -15- difficult question in order to resolve the present appeal. Even assuming the Act applies, and appellant falls within it, appellant cannot prevail. Hence, for purposes of this case only and specifically without deciding the issue, we shall assume that the Defense Bases Act applies to military bases in Puerto Rico. We shall also assume, again solely for purposes of argument and without actually deciding, that appellant could show on the particular facts of his case that he satisfied all other requirements of the Defense Bases Act and the pertinent provisions of the LHWCA.8 ____________________ to provide the same relief to outlying territories, including . . . Puerto Rico, as the existing law affords employees in the United States" and held that the Defense Bases Act applied exclusively and in place of the PRWCA. Id. ___ at 239. How much of Royal Indemnity is still good law is _______________ unclear given the comprehensive evolution since 1944 of the law of federal and state compensation schemes and, in particular, the subsequent amendment of 3(a) of the LHWCA, upon which Royal Indemnity was based. See Simpson v. ________________ ___ _______ Director, Office of Workers' Compensation Programs, 681 F.2d ___________________________________________________ 81, 88 (1st Cir. 1982) (questioning continued vitality of Royal Indemnity after Calbeck v. Travelers Insurance Co., 370 _______________ _______ _______________________ U.S. 114 (1962)), cert. denied sub nom. Bath Iron Works Corp. _____________________ _____________________ v. Director, Office of Workers' Compensation Programs, 459 ____________________________________________________ U.S. 1127 (1983); see generally Lusson v. Carter, 704 F.2d ___ _________ ______ ______ 646 (1st Cir. 1983); Garcia v. Friesecke, 597 F.2d 284; 4 ______ _________ Arthur Larson, The Law of Workmen's Compensation, 89.10- __________________________________ .27(c) (1990). 8. Appellant has never applied for LHWCA benefits on the ground of entitlement under the Defense Bases Act, and thus it has never been determined by the Deputy Commissioner in the applicable United States Department of Labor Compensation District whether and to what extent he may in fact be eligible for such benefits. See 42 U.S.C. 1653; 33 U.S.C. ___ 939; 20 C.F.R. pt. 702; AFIA/CIGNA Worldwide v. Felkner, ____________________ _______ 930 F.2d 1111, 1112-14 (5th Cir.), cert. denied, 112 S. Ct. ____________ 297 (1991) (describing procedures for making claims under LHWCA as extended by Defense Bases Act). On the other hand, -16- We proceed, therefore, on the supposition, arguendo, that Vega-Mena's accident occurred within the ________ concurrent jurisdiction both of the Longshore and Harbor Workers' Compensation Act and of the Puerto Rico Workers' Compensation Act. See Sun Ship, Inc. v. Pennsylvania, 447 ___ _______________ ____________ U.S. 715, 717-19 (1980) (reviewing history of concurrent jurisdiction of state workers' compensation systems and LHWCA). When both the LHWCA and a state act apply concurrently, the injured worker is free to apply for benefits under either system. Id. at 724. "When laborers ___ file claims under the LHWCA, they are compensated under federal standards. And workers who commence their actions under state law will generally be able to make up the difference between state and federal benefit levels by seeking relief under the Longshoremen's Act, if the latter applies." Id. ___ That appellant could have applied (as we assume _____ ____ _______ arguendo) for benefits under the LHWCA, does not mean that ________ any tort claim he may have against a third party is a federal cause of action. Though appellant's injury occurred on a naval base, he has neither alleged nor does he or could he argue that he has a federal maritime cause of action against ____________________ appellant has applied for, and has received, workmen's compensation benefits under Puerto Rico law. As we have already held, the United States is an immune statutory employer under Puerto Rico law. -17- the United States. The LHWCA itself clearly creates no cause of action against the United States as the allegedly negligent third-party contractor. Griffis v. Gulf Coast Pre- _______ _______________ Stress Co., 850 F.2d 1090, 1091 (5th Cir. 1988); Ward v. ___________ ____ Norfolk Shipbuilding & Drydock Corp., 770 F. Supp. 1118, 1121 ____________________________________ (E.D. Va. 1991). The only cause of action for negligence against third parties expressly referred to in section 905 is that against vessels pursuant to 33 U.S.C. 905(b).9 Hence while section 905(a), and 33 U.S.C. 933, provide that the LHWCA does not limit an injured worker's right to sue a third _____ party, those provisions do not create, nor do they purport in ______ any way to establish, the third party's liability for negligence.10 The liability of a third party, other than a ____________________ 9. 33 U.S.C. 905(b) establishes a cause of action against vessels for negligence: In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, . . . . 10. 33 U.S.C. 933(a) provides: (a) Election of remedies If on ___________________________ account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover -18- vessel, must arise under some federal or state law other than the LHWCA. Griffis, 850 F.2d at 1091; Ward, 770 F. Supp. at _______ ____ 1121-22. Here, the only cause of action against the United States is based on Puerto Rico negligence law as made applicable by the Federal Tort Claims Act. "[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." Ferri v. Ackerman, 444 U.S. 193, 198 (1979). _____ ________ Therefore, unless the statutory employer immunity rule of the PRWCA is in conflict with the LHWCA rule, in particular 33 U.S.C. 905(a), under the circumstances of this case, the Puerto Rico defense to appellant's claim applies and, as held above, the United States is immune from appellant's negligence action. After examining the precise scope of the federal and Puerto Rico rules, and keeping in mind the Supreme Court's admonition to avoid "seeking out conflicts between federal and state regulation where none clearly exists," Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, _________________________ _______________ 446 (1960), we find no conflict in these circumstances between the LHWCA's exclusive liability provision and the Puerto Rico rule of statutory employer immunity. As ____________________ damages against such third person. -19- explained in Part II.A. supra, under Puerto Rico's workers' _____ compensation scheme all employers must insure their own employees and, in return, their liability for their employees' injuries is limited by 11 L.P.R.A. 21 to workers' compensation payments. 11 L.P.R.A. 21 provides: 21. Exclusiveness of remedy When an _______________________ employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer, even in those cases where maximum compensations and benefits have been granted in accordance thereof; . . . . In shorthand, 11 L.P.R.A. 21 entitles complying employers to "immunity" from damages actions by injured employees. In addition, a contractor is secondarily liable for the insurance premium payments for its subcontractor's employees when the subcontractor is not properly insured. 11 L.P.R.A. 20. As interpreted by the Puerto Rico Supreme Court, this mutual obligation entitles contractors to the same immunity enjoyed by employers and so such contractors are deemed to be "employers" for the purposes of 11 L.P.R.A. 21. They have so-called "statutory employer immunity." This means that such a contractor can invoke 11 L.P.R.A. 21 as a defense against claims by his subcontractors' injured employees. Under the LHWCA, as under the Puerto Rico statute, an employer must "secure the payment to his employees of the compensation payable" under the LHWCA, 33 U.S.C. 904(a), -20- and in exchange is liable to injured employees only to the extent of the workers' compensation payments. 33 U.S.C. 905(a). In contrast to the PRWCA, however, the LHWCA requires contractors to secure compensation for their subcontractor's employees only if the subcontractors are ________ actually uninsured. 33 U.S.C. 904(a). The more limited responsibility of contractors for their subcontractors' employees is mirrored by the limited immunity for contractors granted by 33 U.S.C. 905(a): The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. . . . For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title. Thus, a contractor is entitled to so-called "statutory employer" immunity under section 905(a) only if the contractor is compelled by section 904(a) to secure workers' compensation for the subcontractor's employees because the subcontractor fails to do so and the contractor actually does secure the payment. Louviere v. Marathon Oil Co., 755 F.2d ________ ________________ 428, 429-30 (5th Cir. 1985). -21- Clearly, then, the statutory employer immunity provisions of the LHWCA and the PRWCA are different. Cf. ___ Garcia v. Friesecke, 597 F.2d 284, 293 (1st Cir.) (explaining ______ _________ differences between Puerto Rico Supreme Court's interpretation of PRWCA, which grants immunity to contractors who require subcontractor to acquire insurance, and the former 1st Circuit interpretation of the PRWCA, which did not), cert. denied, 444 U.S. 940 (1979). It is far less _____________ clear, however, that they are in "conflict." We think they are not. As we decided supra, the United States is entitled _____ to immunity as an "employer" within the meaning of 11 L.P.R.A. 20 against a Puerto Rico negligence action brought by this employee who was both insured, and has recovered compensation, under Puerto Rico's Act. Even assuming the United States would fail were it to try to invoke the statutory employer immunity created by section 905(a),11 this shows only that the federal statute does not go so far as Puerto Rico's to bar third-party actions by employees who come within its own program. The LHWCA does not express disapproval of a state's affording a different or wider employer's immunity in the case of its own insureds. ____________________ 11. Whether the United States would not be federally immune ___ is by no means clear on this record. To qualify for immunity, the United States would have to show that (a) Vigilantes failed to secure LHWCA compensation as required by section 904; and (b) the United States itself secured the payment of such compensation. The facts pertaining to these issues were not developed below. -22- Conflict is lacking because, although section 905(a) does not give the United States immunity from ____ appellant's suit, neither does it take away the immunity ____ ____ separately created by Puerto Rico's workmen's compensation laws. The last sentence of section 905(a) seems crucial: "For purposes of this subsection, a contractor shall be __________________________________ deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title." 33 U.S.C. 905(a) (emphasis added). On its face, section 905(a) limits the extent of immunity for contractors only "for purposes of this subsection." That is, a contractor cannot invoke the first sentence of section 905(a) which limits the liability of an "employer" who complies with 33 U.S.C. 904(a) as a shield against liability to employees of a subcontractor unless the subcontractor actually fails to secure compensation. Section 905(a) does not refer to or otherwise implicate immunities granted by other federal or state laws. In this case, the United States did not invoke section 905(a) as a defense against appellant's action. Instead, it found shelter in a Puerto Rico statute, 11 L.P.R.A. 21. So, while section 905(a) does not confer immunity upon the United States here, neither does it facially prohibit the application of immunity created by Puerto Rico law. -23- Moreover, the legislative history of section 905(a) contains no evidence that Congress intended to preempt state- law rules of statutory employer immunity when the LHWCA and state acts have concurrent jurisdiction. Congress amended sections 4(a) and 5(a) of the LHWCA, 33 U.S.C. 904(a), 905(a), to legislatively overturn the Supreme Court's decision in Washington Metropolitan Area Transit Auth. v. ____________________________________________ Johnson, 467 U.S. 925 (1984). See H.R. Conf. Rep. No. 1027, _______ ___ 98th Cong., 2d Sess. 24 (1984), reprinted in 1984 _________ __ U.S.C.C.A.N. 2734, 2774;12 Griffis, 850 F.2d at 1091; _______ ____________________ 12. The relevant portion of the Joint Explanatory Statement of the Committee of Conference reads: The Senate bill addresses several issues growing out of the liability of employers and third parties for damages or compensation. . . . The Conference substitute deals with the issues of overlapping and indirect liability and of exclusive remedy as follows: . . . . Third, the substitute addresses that issue of immunity in the situation where an employee of a subcontractor brings a third party action against the contractor for a work-related injury. The Supreme Court in Washington Metropolitan Area ______________________________ Transit Authority v. Johnson, 104 S.Ct. _________________ _______ 2827 (1984), changed key components of what had widely been regarded as the proper rules governing contractor and subcontractor liability and immunity under the Longshoremen's and Harbor _________________________________________ Workers' Compensation Act. _________________________ The Conference substitute, in disapproving WMATA v. Johnson, achieves _____ _______ the following: First, the obligation of the contractor to secure compensation for -24- Garvin v. Alumax of South Carolina, Inc., 787 F.2d 910, 916 ______ _______________________________ (4th Cir.), cert. denied, 479 U.S. 914 (1986). The Supreme ____________ Court in Washington Metropolitan Area Transit had held that, _____________________________________ under section 5(a) before it was amended in 1984, contractors were entitled to immunity as "employers" so long as they had not defaulted on their obligation under section 4(a) to ____________________ the employee of the subcontractor is a contingent one, which is triggered only upon the failure of the subcontractor to secure compensation for its own employees. Second, the contractor remains amendable [sic] to suit by its subcontractors' employees in those instances where the subcontractor- employer has fulfilled its statutory obligation to secure compensation for its employees. Third, however, where the subcontractor defaults in securing compensation, thus triggering the contractor's obligation, and the latter fulfills that obligation, the contractor is deemed an "employer" for purposes of ________________ section 5(a) and therefore entitled to _____________ immunity from suit by the subcontractor's employees. Fourth, if the contractor utilizes a "wrap-up" insurance policy to provide insurance coverage for the benefit for satisfying the subcontractor's primary obligation to secure compensation, the contractor still remains amenable to suit by employees of the subcontractor; the contractor does not enjoy the immunity afforded by _____________ Section 5(a) of the Act. _______________________ . . . WMATA, the conferees believe, _____ does not comport with the legislative intent of the Act nor its interpretation from 1927 to 1983. The case should not have any precedential effect. H.R. Conf. Rep. No. 1027, 98th Cong., 2d Sess. 23-24 (1984), reprinted in 1984 U.S.C.C.A.N. 2734, 2773-74 (emphasis _________ __ added). -25- secure back-up compensation for subcontractor employees, regardless of whether or not the subcontractor actually failed to secure compensation for its own employees. 467 U.S. at 936-40. Three months after the Court issued Washington Metropolitan Area Transit, Congress amended ________________________________________ sections 4(a) and 5(a) to narrow the scope of section 5(a) immunity by making it available to contractors only where the subcontractor defaults in securing compensation and the contractor is obliged by the amended section 4(a) to secure it instead. See Longshore and Harbor Workers' Compensation ___ ___________________________________________ Act Amendments of 1984, Pub. L. No. 98-426, 4, 98 Stat. _______________________ 1639, 1641 (1984).13 We find no evidence in the ____________________ 13. That amendment provided: Sec. 4. (a) Section 4(a) is amended to read as follows: "Sec. 4. (a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 7, 8, and 9. In the case of an employer who is a subcontractor, only if such subcontractor fails to secure the payment of compensation shall the contractor be liable for and be required to secure the payment of compensation. A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor.". (b) Section 5(a) is amended by adding at the end thereof the following new sentence: "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails -26- legislative history, however, of an intent to supplant all state-law statutory employer immunity doctrines where the LHWCA and state compensation schemes have concurrent jurisdiction. See Garvin, 787 F.2d at 916-17. Congress ___ ______ expressly stated that the amendment's purpose was to change the rules governing "immunity under the Longshoremen's and Harbor Workers' Compensation Act," the "immunity afforded by Section 5(a) of the Act," and the definition of "'employer' for purposes of section 5(a)." Congress did not mention state-created immunity or state law workers' compensation laws. Absent such evidence, we see no reason to find that Congress intended such a sweeping preemption of state workers' compensation laws, a change that would contradict the general presumption that the LHWCA "supplements, rather than supplants, state compensation law" where the two overlap. Sun Ship, 447 U.S. at 720. Because neither the ________ text nor legislative history of section 905(a) support appellant's contention that it conflicts with Puerto Rico law in this situation, we find no preemption and thus affirm the district court's application of Puerto Rico workers' compensation law without regard for the LHWCA. ____________________ to secure the payment of compensation as required by section 4.". Pub. L. No. 98-426, 4, 98 Stat. 1639, 1641 (1984). -27- Our holding today is consistent with the decision of the Fourth Circuit in Garvin v. Alumax of South Carolina, ______ _________________________ Inc., 787 F.2d 910 (4th Cir.), cert. denied, 479 U.S. 914 ____ ____________ (1986), which held that section 905(a) does not conflict with, and hence does not preempt, the statutory employer rule of South Carolina workers' compensation law, when both regimes apply concurrently and the injured worker brings a common-law negligence claim against a contractor. The Garvin ______ court found that a contractor was entitled to immunity under South Carolina law and was not entitled to the immunity extended by section 905(a), as amended in 1984. There is nothing in that amendment or its legislative history, however, to indicate a congressional intention to restrict the application of state created immunity of contractors in situations in which the state statute traditionally had been applied. It was necessary, of course, for the Congress in the LHWCA to deal in some fashion with employer immunity. That statute has exclusive application in the District of Columbia and to most injuries suffered on the navigable waters of the United States. In those areas, the Congress was free to determine for itself under what circumstances a general contractor would be immune from tort actions by employees of a subcontractor, but nothing done in the Congress suggests that it intended to modify immunities provided general contractors by state workmen's compensation laws, when those laws are applicable. . . . The South Carolina rule of immunity of a contractor in the position of [defendant] is different from that under the LHWCA, but not in conflict with it, for Congress has not purported to -28- prescribe the immunity rules to be applied by states in actions brought upon state law claims. Id. at 916-17. Because plaintiff had a state-law cause of ___ action, the LHWCA immunity rule did not apply and hence did not conflict with the South Carolina rule. Id. Similarly, ___ the Virginia Supreme Court held that where both the LHWCA and Virginia workers' compensation act apply to an injured worker who brings a state-law negligence suit against a contractor, the Virginia statutory employer immunity rule, which is also essentially the same as Puerto Rico's, is not preempted by section 905(a). McBride v. Metric Constructors, Inc., 239 _______ __________________________ Va. 138, 387 S.E.2d 780 (1990). We recognize that under significantly different circumstances the question of whether the LHWCA preempts state-law defenses of statutory employer immunity might have a different answer. See, e.g., Gates v. Shell Oil, 812 F.2d ___ ____ _____ _________ 1509, 1513-14 (5th Cir.), cert. denied, 494 U.S. 1017 (1990) ____________ (holding that the Louisiana statutory employer rule is inapplicable to a federal statutory claim under the Outer Continental Shelf Lands Act by injured offshore worker because it is "inconsistent," within meaning of 43 U.S.C. 1333, with the federal LHWCA rule); Ward v. Norfolk ____ _______ Shipbuilding & Drydock Corp., 770 F. Supp. at 1121-22 _______________________________ (applying LHWCA statutory employer rule instead of state-law rule where injured worker had a "general [federal] maritime -29- negligence cause of action" against a contractor); Kramer v. ______ Bouchard Transp. Co., 741 F. Supp. 1023, 1025-26 (E.D.N.Y. _____________________ 1990) (applying federal rule where LHWCA bar on indemnity actions between vessel owner and employer, 33 U.S.C. 905(b), conflicted with state U.C.C. rule); see also Lewis v. ________ _____ Modular Quarters, 487 U.S. 1226, 1226-27 (1988) (denying _________________ _______ certiorari to 508 So. 2d 975 (La. 1987)) (White, J., __________ __ dissenting, arguing that Supreme Court should have granted certiorari to settle the question whether the LHWCA preempts state-law statutory employer immunity rules). But the above cases are all factually distinguishable from ours, which fits squarely within the rules of Garvin and McBride. ______ _______ III. III. In summary, (1) the district court properly found that, under Puerto Rico law, appellee United States is immune from appellant's negligence action; and (2) for purposes of immunity the district court properly chose to apply Puerto Rico law, instead of section 905(a) of the Longshore and Harbor Workers' Compensation Act, because under the facts of this case the federal act does not preempt the Puerto Rico statutory employer doctrine. We affirm the grant of summary judgment for appellee United States. Affirmed. No costs. ________ ________ -30-